IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW MATTERN and AMANDA MATTERN <br><br> Plaintiff, <br><br> v. <br><br> CITY OF SEA ISLE, POWELL BIRCHMEIER & POWELL, JAMES R. BIRCHMEIER, ESQ., LIEUTENANT ANTHONY GARREFFI, PATROLMAN NICHOLAS GIORDANO, DETECTIVE SERGEANT WILLIAM MAMMELE, LIEUTENANT THOMAS MCQUILLEN, JOHN DOES 1-10, ABC, INC. 1-10. <br><br> Defendants. | HONORABLE JEROME B. SIMANDLE <br><br> Civil No. 14-7231 (JBS/AMD) <br><br><br> **OPINION** |

APPEARANCES:

Jeffrey S. Downs, Esq.
HALPERN & LEVY PC
1204 Township Line Road
Drexel Hill, PA 19026
        Attorney for Plaintiffs

John C. Grady, Esq.
WARDELL CRAIG ANNIN & BAXTER LLP
41 Grove Street
Haddonfield, NJ 08033
        Attorney for Defendants City of Sea Isle; Lieutenant
        Anthony Garreffi; Patrolman Nicholas Giordano; Detective
        Sergeant William Mammele; and John Does 1-10.

Brian M. English, Esq.
TOMPKINS, MCGUIRE, WACHENFELD & BARRY, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
        Attorney for Defendants Powell Birchmeier & Powell and
        James R. Birchmeier, Esq.

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

On November 24, 2012, Plaintiff Andrew Mattern, a seasonal employee with the City of Sea Isle City's Trash Department, operating a Sea Isle City truck on the Sea Isle City promenade when the truck struck and killed a pedestrian. Mattern claims he developed post-traumatic stress disorder from the event, and now, with his wife Amanda Mattern, brings this action under 42 U.S.C. § 1983 against the City of Sea Isle City and several police officers, alleging that Defendants violated his constitutional rights when they failed to evaluate and treat him for shock and emotional trauma while he was detained at the police station for investigation for approximately five hours immediately after the accident. He also brings a legal malpractice claim against his former attorney James R. Birchmeier and the law firm Birchmeier & Powell for failing to take steps to preserve his state tort claims.

The City of Sea Isle City ("City" or "Sea Isle City") along with police officers Anthony Garreffi, Nicholas Giordano, William Mammele, and Thomas McQuillen (collectively, "Sea Isle City Defendants"), have moved to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6). Defendants Birchmeier & Powell and James R. Birchmeier ("Birchmeier Defendants") have

2

separately moved to dismiss the claims against them.

For the reasons set forth below, the Court will grant the Sea Isle City Defendants' motion to dismiss the § 1983 claims. The Court will decline to exercise supplemental jurisdiction over the remaining claim of legal malpractice and will therefore dismiss that claim without prejudice.

## II.   BACKGROUND

### A. Factual Background

The Court recites the allegations as they are laid out in Plaintiffs' Amended Complaint [Docket Item 9] and attached documents.[1]

At the time of the incident, Plaintiff Andrew Mattern was an employee of Sea Isle City, and was one of many city employees assigned to the city's Trash Department and tasked with debris cleanup following Hurricane Sandy. (Am. Compl. ¶¶ 32-33.) On November 24, 2012, Andrew Mattern and three other co-workers, Dennis Felsing, Dylan King, and Daniel Grace, were assigned to clean up beach debris along the beachfront promenade. Mattern was driving a Sea Isle City truck in reverse on the promenade

---

[1] Plaintiffs' Complaint refers to police reports and other documents which are attached as exhibits to the Complaint, and which this Court incorporates into the record, as explained infra, Part III. The Court also considers Plaintiffs' unopposed supplemental submission of the power of attorney executed by Andrew Mattern in favor of Amanda Mattern. [Docket Item 26.]

near 51st Street when the truck struck Bernice Pasquerello, a pedestrian who happened to be in the truck's path. The vehicle knocked Ms. Pasquerello down and the vehicle backed over her before Mattern realized what had happened. Ms. Pasquerello was pronounced dead at the scene. (Id. ¶¶ 61-67.) A few days after the accident, an investigation revealed that the reverse beeper on Mattern's truck was not working on the day of the accident and had been broken since June or July. (Id. ¶ 121.)

Defendant Patrolman Nicholas Giordano was one of the first officers to arrive on the scene at approximately 1:30 p.m. (Id. ¶ 70; Giordano Police Report, Ex. D to Am. Compl.) He observed that Plaintiff did not appear impaired, but was "visibly emotional and shaken up about what occurred." (Am. Compl. ¶ 71; Giordano Police Report at 2.) Giordano had Plaintiff sit on a bench until Defendant Detective Sergeant William Mammele arrived. (Giordano Police Report at 2.)

Detective Mammele arrived shortly thereafter. He asked Plaintiff if he was okay and Plaintiff responded, "No, I just killed someone." Mammele asked Plaintiff what happened and Plaintiff recounted the incident. Mammele observed that Plaintiff was "visibly shaken and very upset," and that there was "no sign of physical impairment nor any odor of alcoholic beverage" on Plaintiff. (Am. Compl. ¶ 72; Mammele Police Report,

4

Ex. E to Am. Compl., at 1.)

Defendant Lieutenant Anthony Garreffi was the last of the three to arrive, and told Plaintiff to wait inside Mammele's car. (Am. Compl. ¶ 76; Garreffi Police Report, Ex. F to Am. Compl., at 1.) At some point, Amanda Mattern came to the scene, but officers at first did not tell her where her husband was. (Am. Compl. ¶ 77.) At around 1:50 p.m., Giordano drove the Matterns to the police station. He sat with the Matterns in silence in Defendant Lieutenant Thomas McQuillen's office until McQuillen arrived, at approximately 2:50 p.m. (Am. Compl. ¶ 78-79; Giordano Police Report at 2; McQuillen Police Report, Ex. G to Am. Compl., at 1.) Andrew Mattern alleges that at the time, he was suffering from mental trauma and "was in a state of mind which was visibly abnormal to everyone he encountered." (Am. Compl. ¶ 80.)

McQuillen noticed that Andrew Mattern "was visibly upset and appeared to have been crying." (McQuillen Police Report at 1.) McQuillen told Plaintiff that "it was all a terrible accident, and that [Plaintiff] should try to remain calm." (Am. Compl. ¶ 87; McQuillen Police Report at 2.) He further explained that they wanted to get a tape recorded statement from Plaintiff "to get an idea of exactly what had happened," but had to wait until an investigator from the prosecutor's office arrived to

begin. (McQuillen Police Report at 2.) Plaintiff repeatedly
stated that he "was just driving that truck" and "had no idea
where [Ms. Pasquerello] came from." (Am. Compl. ¶ 84.)

    After about 40 minutes of waiting, Amanda Mattern stepped
out of the office to make a phone call and came back and told
McQuillen that she had retained an attorney for Mr. Mattern,
John Tumelty, but Mr. Tumelty would not get to the police
station until about 6:00 p.m. Plaintiffs allege that McQuillen
"flew into a rage" and screamed at Amanda Mattern when he found
out that an attorney had been retained, which added to Andrew
Mattern's mental trauma. (Am. Compl. ¶ 94.) According to
McQuillen's police report, McQuillen advised the Matterns that
they would wait until his attorney arrived. (Am. Compl. ¶ 94-95;
McQuillen Police Report at 2.) The Matterns were also told that
they would have to wait to go to the hospital. (Am. Compl. ¶
97.)

    The Matterns stayed in McQuillen's office until Mr.
Tumelty arrived at approximately 6:00 p.m. A minister, Deacon
Joseph Murphy, was at the police station to speak with police
officers and assess the need for grief counseling. (Am. Compl. ¶
98; McQuillen Police Report at 3.) Deacon Murphy asked officers
whether he was needed to speak with Andrew Mattern, and was told
that he was not. (Am. Compl. ¶ 99.) The Matterns left the

6

station with Mr. Tumelty shortly after Mr. Tumelty arrived.
Plaintiff was ultimately issued a traffic citation. (Id. ¶¶ 101-
102.)

As a result of the incident, Andrew Mattern alleges he
developed post-traumatic stress disorder. Plaintiffs allege that
Andrew Mattern "began to suffer the effects of this trauma
immediately, but the drawn-out pressures which were felt by his
prolonged, improper detainment, contributed to the continuing
trauma from which Plaintiff Andrew Mattern suffers today." (Id.
¶ 129.) Plaintiffs allege that Andrew Mattern can no longer work
or hold any form of gainful employment, and that Amanda Mattern
is now the sole breadwinner of the family. Plaintiffs further
allege that Andrew Mattern is no longer able to perform routine
domestic duties and allege a loss of physical and emotional
intimacy. (Id. ¶¶ 107-110.) Amanda Mattern was given power of
attorney for Andrew Mattern in October of 2013, approximately
ten months after the incident. [Docket Item 26.][2]

After the incident, the estate of Bernice Pasquerello filed
a wrongful death suit in the Superior Court of New Jersey,
naming the City of Sea Isle City and Andrew Mattern as

---

[2] With consent from all parties, Plaintiffs later supplemented
the record to include a power of attorney executed by Andrew
Mattern naming Amanda Mattern as his power of attorney on
October 3, 2013. [Docket Item 26.]

defendants. Sea Isle City's insurance carrier retained Defendant James Birchmeier, Esq. as defense counsel for Andrew Mattern.

Birchmeier contacted the Matterns on August 5, 2013, and advised Andrew Mattern that he would be representing him. (Am. Compl. ¶¶ 111-112, 162.) The Matterns claim they relied upon Birchmeier to represent their interests in connection with the incident by addressing any potential conflicts of interest and preserving potential causes of action which Andrew Mattern might have. (Id. ¶¶ 113, 115, 164.) Pertinent details of Plaintiffs' legal malpractice claim are summarized in the margin.[3]

### B. Procedural History

_____

[3] According to the Complaint, the reverse beeper on Andrew Mattern's truck was not working on the day of the accident and had not been working for months. (Am. Compl. ¶ 121.) Plaintiffs allege that they had a potential claim against Sea Isle City for failing to replace the beeper and allowing Plaintiff to operate an unsafe vehicle, which Mr. Birchmeier should have noted. (Am. Compl. ¶ 202.)

Plaintiffs allege that Birchmeier never explained that Andrew Mattern might have affirmative claims for damages against the City and never advised the Matterns of any statute of limitations or notice requirements for filing state tort claims under the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:8-3 et seq. (Id. ¶¶ 116, 164.) Eventually, the Matterns sought alternative counsel and retained Jeffrey S. Downs, Esq., the Matterns' current attorney, to represent them. Birchmeier withdrew as Mattern's attorney in August 2014, (id. 112), and the instant Complaint was filed in this Court by Mr. Downs on October 19, 2014.

Three days later, Mr. Downs filed a Notice of Motion for Leave to File a Late Notice under the NJTCA in Plaintiff's case in the New Jersey Superior Court. (Id. ¶¶ 112, 124, 165; Notice of Motion for Leave to File Late Notice, Ex. J to Compl. [Docket Item 1-2].) That motion was denied in December 2014. (Am. Compl. ¶ 124.)

This case has a somewhat tortured procedural history. Plaintiffs filed their initial Complaint [Docket Item 1] against the City of Sea Isle City, seven named police officers in the Sea Isle City Police Department, the law firm of Birchmeier & Powell, and attorney James Birchmeier. Plaintiffs bring a claim under 42 U.S.C. § 1983 against the individual police officers, alleging that they failed to obtain proper medical attention for Andrew Mattern and caused his post-traumatic stress and emotional trauma, in violation of the Fourteenth Amendment's due process clause (Count One). Against the City of Sea Isle, Plaintiffs bring an action under Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978), for constitutional deprivations caused by inadequate policies and customs, and failure to train and failure to supervise (Count Two). Finally, Plaintiffs bring a claim of legal malpractice against the Birchmeier Defendants for failing to properly file a Notice of Claim under the NJTCA (Count Three) and for alleged loss of the ability to bring five common law claims: intentional and negligent infliction of emotional distress, false imprisonment, negligence, on behalf of Andrew Mattern; and intentional infliction of emotional distress and loss of consortium on behalf of Amanda Mattern.

The Sea Isle City Defendants moved to dismiss the Complaint in its entirety [Docket Item 7], arguing that the § 1983 claim

must be dismissed because the individual officers' actions did
not rise to the level of a constitutional violation; and
Plaintiffs are barred from bringing state law claims because
they failed to comply with the notice requirement of the NJTCA.
Defendants also argued that the City is not liable under Monell
because Plaintiffs have not plausibly pleaded inadequate
training or supervision or a pattern of constitutional
violations.

Plaintiffs then filed an Amended Complaint as of right
under Fed. R. Civ. P. 15(a)(1)(B) [Docket Item 9],[4] dropping two
Sea Isle City police officers as defendants and adding some
additional allegations to their § 1983 claims against the City
for having a deficient policy or custom with respect to first
responder assessment and treatment of trauma.[5] Instead of filing
a new motion to dismiss the Amended Complaint, Defendants filed
a letter brief styled as a "reply" to their motion to dismiss
addressing the new allegations in Plaintiff's amended pleading.
[Docket Item 12.] Plaintiffs moved for permission to file a sur-

_____

[4] Federal Rule of Civil Procedure 15(a)(1)(B) allows a party to
amend its pleading once as a matter of course within 21 days
after service of a motion under Rule 12(b). Fed. R. Civ. P.
15(a)(1)(B). Plaintiffs' Amended Complaint was filed on February
24, 2015, 20 days after Defendants filed their motion to dismiss
on February 4, 2015.
[5] The parties later stipulated to the dismissal of Brian Hamilton
as a defendant [Docket Item 34], leaving four named officers as
defendants.

reply to defend the Amended Complaint [Docket Items 13 & 14]. Defendants did not oppose the filing, but filed an additional sur sur-reply responding to Plaintiff's sur-reply without seeking leave from the Court. [Docket Item 20]. Plaintiffs oppose that filing. [Docket Item 20.]

To sort out the tangled briefing in this case, Magistrate Judge Ann M. Donio held a conference with the parties, and an agreement was reached for the Court to address the Sea Isle City Defendants' motion to dismiss on the merits as it applies to Plaintiff's Amended Complaint. [Docket Item 37.]

The Birchmeier Defendants also moved to dismiss all claims against them in the Amended Complaint [Docket Item 15], arguing that they are not liable for failing to file a notice of claim under the NJTCA because Defendants did not begin representing Plaintiffs until over five months after the 90-day deadline expired for filing a notice. Plaintiffs opposed Defendants' motion, and subsequently moved to file a sur-reply [Docket Item 19], which Defendants oppose.

## III. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded allegations in the complaint and draw all reasonable

11

inferences in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam).

A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). A plaintiff should plead sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," Twombly, 550 U.S. at 556, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678.

If documents or exhibits are attached to and described in the complaint, they are "incorporated into the record for consideration of a 12(b)(6) motion." Rossman v. Fleet Bank (R.I.) Nat. Ass'n, 280 F.3d 384, 387 n.4 (3d Cir. 2002) (citing Rose v. Bartle, 871 F.2d 331, 340 n.3 (3d Cir. 1989)); see also Chester Cnty. Intermediate Unit v. Pennsylvania Blue Shield, 896

12

F.2d 808, 812 (3d Cir. 1990); <u>Senn v. Hickey</u>, 2005 WL 3465657, at *2 (D.N.J. Dec. 19, 2005).

The Court exercises subject matter jurisdiction over Plaintiff's federal claims against the Sea Isle City Defendants pursuant to 28 U.S.C. § 1331, and the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367, as explained in Part IV.D, below.

## IV.  DISCUSSION

### A. The Court will Grant Plaintiffs' Motion to File a Sur-Reply to the Sea Isle City Defendants' Motion to Dismiss but will Strike Plaintiffs' Sur-Reply to the Birchmeier Defendants' Motion to Dismiss.

The parties agreed that Plaintiff's sur-reply to the Sea Isle City Defendants' motion to dismiss [Docket Item 37] will be considered in deciding Plaintiffs' Amended Complaint, and Plaintiffs' motion to file a sur-reply to the Sea Isle City Defendant's motion [Docket Item 14] will be granted.

However, because Plaintiffs did not seek leave from the Court before filing their sur-reply to the Birchmeier Defendants' motion to dismiss, and because the Birchmeier Defendants did not raise any new issues in their reply brief that would necessitate a response, the Court will not consider Plaintiffs' sur-reply. <u>See</u>, <u>e.g.</u>, <u>Carroll v. Delaware River Port Auth.</u>, No. 13-2833, 2014 WL 3748609, at *1 n.2 (D.N.J. July 29,

13

2014) (disregarding sur-reply because "[d]efendant failed to ask for, much less receive, permission to file a sur-reply prior to filing the sur-rely."); SBA v. Herbst, No. 08-1396, 2009 WL 1351588, at *1 n.1 (D.N.J. May 14, 2009) (declining to consider sur-reply because it was submitted in violation of Local Rule 7.1(d)(6); Morris v. Verniero, No. 03-1001, 2008 WL 1790433, at *1 n.1 (D.N.J. Apr. 18, 2008) ("[B]ecause Plaintiff did not seek leave from the Court before filing his Sur-Reply, as he was required to do pursuant to Local Civ. R. 7.1(d)(6), the Court will strike the Sur-Reply and declines to consider it.").

**B. Plaintiffs' § 1983 Claims against Garreffi, Giordano, Mammele, and McQuillen for Denial of Medical Care will be Dismissed.**

The Matterns seek relief against Garreffi, Giordano, Mammele, and McQuillen under 42 U.S.C. § 1983, arguing that the Defendant officers violated Andrew Mattern's Fourteenth Amendment due process rights by not seeking medical care for his emotional trauma during the approximately four and a half hours he was in police custody for investigation.

42 U.S.C. § 1983 provides a civil remedy against any person who, acting under color of state law, deprives another of rights protected by the U.S. Constitution. To establish a claim under § 1983, a plaintiff must demonstrate that her constitutional rights were violated and that the deprivation was committed by a

14

person acting under color of state law. See West v. Atkins, 487
U.S. 42, 48 (1988); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d
Cir. 1996) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137,
1141 (3d Cir. 1995)).

"The first step in evaluating a section 1983 claim is to
'identify the exact contours of the underlying right said to
have been violated' and to determine 'whether the plaintiff has
alleged a deprivation of a constitutional right at all.'" Nicini
v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (quoting Sacramento
v. Lewis, 523 U.S. 833, 841 n.5 (1998)). The particular right at
issue in Plaintiffs' claim for denial of medical care is the
right to receive an assessment and treatment for emotional
trauma caused by an accident. Both Plaintiffs and Defendants
agree that the denial of medical care rises to the level of a
constitutional violation when the failure or delay is a result
of Defendants' deliberate indifference to a serious injury or
illness. Defendants appear to locate the right under the Eighth
Amendment, and Plaintiffs likewise argue that the "[d]enial of
medical attention is a violation of [the] Eighth and Fourteenth
Amendments." (Compare Sea Isle City Br. [Docket Item 7-1] at 11
with Pl. Sur-Reply to Sea Isle City Br. [Docket Item 14] at 10-
11.)

As an initial matter, the Court notes that Plaintiff's

Eighth Amendment rights are not implicated in this case. It is well-settled that the Eighth Amendment does not provide protection to individuals who have not yet been convicted or sentenced. The Eighth Amendment "was designed to protect those convicted of crimes and consequently the [Cruel and Unusual Punishment] Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions." Whitley v. Albers, 475 U.S. 312, 318 (1986) (citation and internal quotations omitted)); see also Graham v. Connor, 490 U.S. 386, 392 n.6 (1989) (noting that the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until "after sentence and conviction."). Because Andrew Mattern was not convicted of anything, he is not within the ambit of the Eighth Amendment. Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (citing Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987)).[6]

Mattern's claim of denial of medical care arises in the context of pre-incarceration detention and interrogation, and

---

[6] The Eighth Amendment cases cited by Defendants discuss the denial of medical care to convicted inmates in a prison setting. See Estelle v. Gamble, 429 U.S. 97 (1976) (discussing the government's obligation to provide medical care to prisoners); Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347-48 (3d Cir. 1987) (citing Estelle and analyzing whether prison officials violated the Eighth Amendment by denying pregnant inmates access to abortions).

the Fourteenth Amendment's due process clause rather than the Eighth Amendment applies. See  City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 243–45 (1983) (holding that the Due Process Clause requires the government to provide medical care to persons injured while being apprehended by the police, and Eighth Amendment is not applicable "because there has been no formal adjudication of guilt"); Mills v. Fenger, 216 Fed. App'x 7 (2d Cir. 2006) (denial of medical care arising in the course of pretrial arrest and detainment is evaluated under the Due Process Clause of the Fourteenth Amendment); Callaway v. N.J. State Police Troop A, No. 12-5477, 2015 WL 1202533, at *5 (D.N.J. Mar. 17, 2015) (relying on Fourteenth Amendment's due process clause to evaluate plaintiff's claim that police officers failed to provide medical care during interrogation); Shiloh v. Does, No. 12-1086, 2013 WL 5297511, at *2 (M.D. Pa. Apr. 19, 2013) (construing plaintiff's claim that she was denied medical care during arrest as one arising under the Fourteenth Amendment's due process clause rather than under the Eighth Amendment). The Supreme Court recently affirmed this distinction in Kingsley v. Hendrickson, noting that while the Eighth Amendment applies to convicted prisoners, claims brought by pretrial detainees fall under the Fourteenth Amendment's Due Process Clause. 135 S. Ct. 2466, 2475 (2015).

17

Consistent with the law in this Circuit, the Court will "evaluate [Andrew Mattern's] Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003). In so doing, the Court notes that the Eighth Amendment standard acts only as a floor for due process inquiries under the Fourteenth Amendment. See Revere, 463 U.S. 239, 243 (1983) (stating that due process right to medical care of an individual injured while being apprehended is "at least as great as the Eighth Amendment protections available to a convicted prisoner."); Hubbard, 399 F.3d at 165-67; Colburn v. Upper Darby Twp., 838 F.2d 663, 668 (3d Cir. 1988) (noting that an individual is entitled under the Fourteenth Amendment to, at minimum, "no less a level of medical care than that required for convicted prisoners by the Eighth Amendment.").

To establish a claim for inadequate medical care under the Fourteenth Amendment, Plaintiffs must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale, 318 F.3d at 582 (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)); Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976));

18

Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995)
("Failure to provide medical care to a person in custody can
rise to the level of a constitutional violation under § 1983
only if that failure rises to the level of deliberate
indifference to that person's serious medical needs.").

The Court does not find that the Defendant officers'
conduct in this case, as alleged in the Amended Complaint and
exhibits referenced therein, rises to the level of a Fourteenth
Amendment violation. First, Plaintiffs' allegations are
insufficient to support a reasonable inference that Plaintiff
was suffering from a "serious medical need." "A medical need is
'serious,' in satisfaction of the second prong of the Estelle
test, if it is 'one that has been diagnosed by a physician as
requiring treatment or one that is so obvious that a lay person
would easily recognize the necessity for a doctor's attention.'"
Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347
(3d Cir. 1987) (citations omitted).

The Court does not dispute that there may be a "serious
medical need" for treatment of mental problems or conditions.
The Third Circuit has recognized, at least in the context of
suicide prevention, that a "'serious medical need may exist for
psychological or psychiatric treatment, just as it may exist for
physical ills.'" Barkes v. First Corr. Med., Inc., 766 F.3d 307,

19

328 n.13 (3d Cir. 2014) (quoting <u>Partridge v. Two Unknown Police</u> <u>Officers</u>, 791 F.2d 1182, 1187 (5th Cir. 1986)), rev'd on other grounds, <u>Taylor v. Barkes</u>, 135 S. Ct. 2042 (2015); <u>Colburn v.</u> <u>Upper Darby Twp.</u>, 838 F.2d 663, 669 (3d Cir. 1988) (quoting <u>Partridge</u>). In this case, however, Plaintiff asserts that emotional trauma caused by an accident may constitute a "serious medical need." The Court has found no cases – and Plaintiff cites to none – specifically recognizing mental trauma in an uninjured person involved in an accident as a readily apparent condition giving rise to a "serious medical need" requiring immediate medical treatment within the context of a § 1983 claim.

Plaintiffs' citation to a single New Jersey Supreme Court case discussing post-traumatic stress within the context of the Tort Claims Act is inapposite. In that case, an inmate sued the county under the New Jersey Tort Claims Act ("NJTCA") for compensatory damages after he was sexually assaulted by an officer at the county jail. The New Jersey Supreme Court held that the plaintiff's post-traumatic stress disorder may constitute a "permanent loss of a bodily function" within the meaning of the Tort Claims Act, allowing the plaintiff, who did not suffer any residual physical injury, to recover damages against the county under the statute. <u>Collins v. Union Cnty.</u>

20

Jail, 696 A.2d 625, 626 (N.J. 1997). The Supreme Court specifically distinguished Collins from other cases denying recovery under the Tort Claims Act for emotional trauma, because the plaintiffs in those cases "were not subject to any direct physical violation," and because the emotional injury in those cases was subjective. 696 A.2d at 417-18. Thus, Collins does not stand for the proposition Plaintiffs assert in this case – that any subjective allegation of post-traumatic stress following a traumatic event is a "serious medical need" within the context of a 42 U.S.C. § 1983 claim for denial of medical care, and government officials may be held constitutionally liable for failing to evaluate an uninjured motorist for mental distress at the scene of an accident.

Even if this Court were to find that mental trauma from an accident may sometimes qualify as a "serious medical need," Plaintiffs' allegations are insufficient to meet the threshold set forth by the Third Circuit in Lanzaro: The facts simply do not support a claim that his mental suffering was "so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Lanzaro, 834 F.2d at 347. Although Plaintiff alleges that he "was suffering from a mental trauma" and from post-traumatic stress immediately after the accident (Am. Compl. ¶ 80), the facts in the Complaint suggest that his

emotional distress in the hours after the accident was not so
remarkable. For example, the police reports written shortly
after the accident describe Plaintiff as "visibly shaken,"
"emotional," and "very upset," but also note that he did not
appear impaired in any other manner. Plaintiff was also able to
speak coherently with multiple police officers, obey their
directions without any problem, and recount to them exactly what
had happened. The only reasonable reading of Plaintiffs'
allegations is that Mr. Mattern remained oriented to time, place
and circumstances throughout his encounter with the police
officers. Moreover, nowhere in the Complaint does Plaintiff
state that he sought psychiatric treatment during or after the
incident, nor does Plaintiff suggest that he was ever diagnosed
by a medical professional with post-traumatic stress disorder.
Even construing the allegations liberally and drawing all
inferences in Plaintiff's favor, the Court does not find that it
was "so obvious" from Plaintiff's demeanor that he was suffering
from severe emotional trauma and needed immediate medical
attention. It is especially far-fetched to claim that the
Constitution requires an investigating police officer in the
aftermath of a traffic accident to diagnose PTSD of an uninjured
party when no medical practitioner has done so.

        Plaintiff has also failed to adequately plead the second

element by failing to plead any acts or omissions by the
individual Defendants that indicate their deliberate
indifference. "Deliberate indifference is a 'subjective standard
of liability consistent with recklessness as that term is
defined in criminal law.'" Natale v. Camden Cnty. Corr.
Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Nicini v.
Morra, 212 F.3d 798, 811 (3d Cir. 2000). In Farmer v. Brennan,
the Supreme Court held that, in the context of suits challenging
prison conditions under the Eighth Amendment, an official
"cannot be found liable . . . unless the official knows of and
disregards an excessive risk to [the plaintiff's] health and
safety." 511 U.S. 825, 837 (1994). In situations involving
claims for inadequate medical care, the Third Circuit has found
deliberate indifference in situations where there was "objective
evidence that [a] plaintiff had serious need for medical care,"
and prison officials ignored that evidence. Nicini, 212 F.3d at
815 n.14. Thus, for example, officials may be deliberately
indifferent if they knew the plaintiff was diabetic, in insulin
shock, and in need of immediate hospitalization, but refused to
take him there, or if there was sufficient evidence that a
plaintiff's need for medical care was obvious. Id. (citing
Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996) and Chavez v.
Cady, 207 F.3d 901 (7th Cir. 2000)).

23

Defendants' alleged conduct in this case does not rise to
the level of deliberate indifference. As already discussed
above, although Plaintiff alleges that he experienced severe
mental stress, his actions after the accident, and Defendants'
observations of Plaintiff as memorialized in the police reports
cited by Plaintiffs themselves, do not suggest that Plaintiff
was in need of immediate medical attention for psychological
trauma. Plaintiff was able to speak coherently with Defendants
and was also able to recount exactly what had happened.
Defendants observed that he was emotional and visibly
distraught, which are normal and understandable reactions to
this tragic event, but he was not acting inappropriately or in a
way that manifestly demonstrated that he was in shock or needed
psychiatric attention. Nor are there facts to suggest that
Defendants ignored an obvious need for treatment. There is no
allegation that either Andrew or Amanda Mattern requested
medical treatment for Andrew Mattern from any of the officers,
and the underlying police reports likewise do not indicate that
they ever did so in the officers' presence.[7] No reading of these

---

[7] Plaintiffs argue that the need for medical attention was
"objectively obvious." (Pl. Sur-Reply to Sea Isle City Br. at
13.) But liability may be imposed for deliberate indifference
only if the plaintiff proves that the defendant actually knew of
an excessive risk to the plaintiff's health and disregarded that
risk. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). In other
words, it is insufficient to show only that Defendants should

facts can support a claim that Defendants acted with deliberate indifference, "consistent with recklessness," when they did not seek medical attention to evaluate Plaintiff for mental trauma. See Callaway v. N.J. State Police Troop A, No. 12-5477, 2015 WL 1202533, at *6 (D.N.J. Mar. 17, 2015) (dismissing Fourteenth Amendment claim of denial of medical care where plaintiff was denied medical treatment for a broken rib or torn cartilage for more than 14 hours without medical attention, because plaintiff did not request medical attention).[8]

---

have known of the need for treatment, because the inquiry also contains a subjective component, which asks whether "the officials act[ed] with a sufficiently culpable state of mind." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (holding that the Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment standard, contains both an objective and subjective component). There are no facts in the Complaint to suggest that Defendants knew that Plaintiff was suffering from emotional trauma and needed to be examined by a doctor, but denied Plaintiff medical treatment anyway. Callaway, 2015 WL 1202533, at *6.

[8] The Court notes that Defendants would likely also be entitled to qualified immunity. In Barkes v. First Corr. Medical, Inc., 766 F.3d 307 (3d Cir. 2014), the Third Circuit held that prison officials were deliberately indifferent to the serious medical needs of an inmate when they failed to recognize the inmate's vulnerability to suicide. 766 F.3d 307, 329 (3d Cir. 2014). The Supreme Court recently reversed on qualified immunity grounds, holding that there was no clearly established constitutional right to adequate protocols to evaluate prisoners' mental health for suicide prevention. See Taylor v. Barkes, 135 S. Ct. 2042, 2044-45 (2015). Given the paucity of cases recognizing a constitutional right to a psychiatric evaluation and treatment for mental trauma immediately following an accident, even if this Court were to recognize a constitutional violation in this case, Defendants would likely be entitled to qualified immunity. No reasonable officer could have thought that failing to provide

Accordingly, the Court finds that Plaintiff Andrew Mattern has failed to state a constitutional claim under 42 U.S.C. § 1983 for denial of medical care against Defendants Garreffi, Giordano, Mammele, and McQuillen, and will dismiss Count One against those Defendants.

### C. Plaintiffs' § 1983 Claim against Sea Isle City will be Dismissed.

Plaintiffs assert that Defendant Sea Isle City is liable under 42 U.S.C. § 1983 for Fourteenth Amendment violations under two theories: first, that Defendant had a custom of failing to assess and treat individuals at accidence scenes for emotional and mental trauma; and second, that Defendant "failed to adequately train its employees to properly care for emotional trauma where a horrific accident causes someone who is abiding by the laws, unfortunately kills someone via automobile." (Pl. Sur-Reply to Sea Isle City Br. at 12-14, 16.)

Plaintiffs' § 1983 claim against Sea Isle City must be dismissed because, as explained above, the facts are insufficient to show that Andrew Mattern's Fourteenth Amendment

---

psychiatric care to Mr. Mattern during the few hours of his detention violated any clearly established right. Id. at 2045 (finding no clearly established right to proper implementation of adequate suicide prevention protocols where no Supreme Court case existed which discussed suicide screening or prevention protocols, and no Third Circuit case existed that was directly on point).

rights were violated in this case. In the absence of a constitutional violation, Sea Isle City cannot be held liable under § 1983 for failure to train or for acquiescing in an unconstitutional custom. See Kitchen v. Dallas Cnty., 759 F.3d 468, 483 (5th Cir. 2014) ("As is well established, every Monell claim requires 'an underlying constitutional violation.'" (citation omitted)); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (municipality's failure to train or supervise its police officers only becomes a basis for liability when "action pursuant to official municipal policy of some nature *caused a constitutional tort*.") (emphasis added). But even assuming Plaintiffs have sufficiently alleged a Fourteenth Amendment claim, the allegations do not state a claim against Sea Isle City under § 1983.

To prevail on a Monell claim under § 1983, a plaintiff must first establish that the municipality had a policy or custom that deprived him of his constitutional rights. Pelzer v. City of Philadelphia, 656 F. Supp. 2d 517, 531 (E.D. Pa. 2009) (citing Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403–404, (1997)). A policy or custom may be said to exist even where "the policymaker has failed to act affirmatively at all," as long as "the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of

27

existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Brown, 520 U.S. at 417-18; Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003). A showing of simple or even heightened negligence will not suffice. Id. at 407; see also City of Canton v. Harris, 489 U.S. 378, 389 (1989).

To state a claim under § 1983 for failure to train, a plaintiff must show that the defendant failed to offer some specific training that would have prevented the deprivation of the plaintiff's constitutional rights, Canton, 489 U.S. at 390, and that the defendant's failure to train or supervise employees amounted to "'deliberate indifference' to the rights of persons with whom those employees will come into contact.'" Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999) (quoting Canton, 489 U.S. at 388); Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (noting that plaintiff "must identify a failure to provide specific training").

While a claim asserting municipal liability under Monell is ordinarily established by showing a pattern of constitutional violations, see Brown, 520 U.S. at 407, the Supreme Court has recognized that where a violation of federal rights is a "highly predictable consequence" of an inadequate municipal policy or

28

custom in a situation that is likely to recur, municipal liability may attach upon a single application of that custom. Id. at 409–10 (citing Canton, 489 U.S. at 390); see also Connick v. Thompson, 131 S. Ct. 1350, 1361 (2011) (a single incident may trigger municipal liability where unconstitutional consequences for failure to train are "patently obvious"). The Third Circuit has applied this "single-incident liability" theory to failure-to-train claims, but has recognized that it also applies "to other claims of [municipal] liability through inaction." Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

Plaintiffs' Monell claim is based upon the single-incident liability theory. Plaintiffs argue that, because it is obvious that individuals involved in a deadly accident would need medical attention for shock, "it must be the policy of this State that when one is in control of a vehicle that kills someone, that person must be evaluated for shock and emotional trauma." (Pl. Sur-Reply to Sea Isle City Br. at 13–14.) The Court disagrees.

It is not obvious that every individual involved in a deadly car accident would be so traumatized that an immediate psychological evaluation and treatment is necessary. Plaintiffs have no allegations in their Amended Complaint and have cited to no cases – and the Court finds none – that would lend support to

this argument. Nor does the Court find that the development of post-traumatic stress is a highly predictable consequence of Defendant's failure to assess an individual's mental health in the immediate aftermath of a car accident. Fatal car accidents occur in a variety of ways, and there is no way to predict how affected individuals will respond to the accident. Although some will undoubtedly require immediate mental health treatment, many others will not. First responders who arrive at the accident scene, observe the surroundings, and communicate with everyone involved are in the best position to assess the reactions of affected individuals to determine whether immediate treatment is necessary. The Court declines Plaintiffs' invitation to create a new constitutionally mandated rule requiring all first responders to treat individuals involved in deadly car accidents for shock or other post-traumatic stress.

Defendant also alleges that the City failed to train its officers "regarding the failure to assess mental and emotional trauma." (Am. Compl. ¶ 155.) For similar reasons, Plaintiffs' failure to train claim must be dismissed. Plaintiff has not made out an underlying constitutional violation, and the Court does not find it patently obvious that Defendants' lack of training on assessing and treating emotional trauma would result in permanent psychological trauma for individuals involved in

deadly accidents. <u>Connick</u>, 131 S. Ct. at 1361.

### D. The Court will Decline to Exercise Supplemental Jurisdiction Over Plaintiffs' Attorney Malpractice Claim

Because the § 1983 claims have been dismissed, Plaintiffs'
only remaining claim is the legal malpractice claim against the
Birchmeier Defendants (Count Three). There is no diversity of
citizenship between Plaintiffs and the Birchmeier Defendants, as
all parties are New Jersey citizens, so jurisdiction under
§ 1332 cannot lie. The Court will exercise its discretion and
will decline to exercise supplemental jurisdiction over
Plaintiff's legal malpractice claim.

"The district courts may decline to exercise supplemental
jurisdiction . . . if . . . the district court has dismissed all
claims over which it has original jurisdiction . . . ." 28
U.S.C. § 1367(c)(3). "The decision to retain or decline
jurisdiction over state-law claims is discretionary" and "should
be based on considerations of judicial economy, convenience and
fairness to the litigants." <u>Kach v. Hose</u>, 589 F.3d 626, 650 (3d
Cir.2009) (citations omitted). Additionally, the federal court
should be guided by the goal of avoiding "[n]eedless decisions
of state law . . . both as a matter of comity and to promote
justice between the parties." <u>United Mine Workers v. Gibbs</u>, 383
U.S. 715, 726 (1966). "Where the federal claims are dismissed at

31

an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims." Walls v. Dr. Blackwell, No. 05-4391, 2005 WL 2347124, at *3 (D.N.J. Sept. 22, 2005) (citing Gibbs, 383 U.S. at 726).

   The Court finds it appropriate to decline jurisdiction over the legal malpractice claim. In order to adjudicate the claim against the Birchmeier Defendants, this Court would need to examine whether the Birchmeier Defendants' failure to file a late notice of claim under the NJTCA caused the loss of Plaintiff's state tort claims against the Sea Isle City Defendants. Such an inquiry necessarily requires the Court to determine whether "extraordinary circumstances" existed under N.J.S.A. 59:8-9 such that Plaintiff would have been permitted to file a late notice of claim. That question, however, has already been answered by the New Jersey Superior Court, which found on December 5, 2014, that that no extraordinary circumstances existed to justify Plaintiffs' filing of a late notice of claim nearly two years after the accident. (See Op. Denying Mot. to File Late Notice of Claim, Ex. A to Birchmeier Mot. to Dismiss [Docket Item 15-3], at 12-15) (finding no extraordinary circumstances because Plaintiffs failed to provide medical proofs to support that Andrew Mattern "suffered and continues to suffer severe psychological trauma," and because Mr.

Birchmeier's negligence does not rise to the level of extraordinary circumstances). Given the New Jersey Superior Court's decision, the Court finds that fairness weighs against adjudicating this claim in federal court.

Additionally, as this case is still at an early stage in the litigation, "dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties." Freund v. Florio, 795 F. Supp. 702, 711 (D.N.J. 1992); see also Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3567.3 (3d ed.) ("As a general matter, a court will decline supplemental jurisdiction if the underlying [federal question] claims are dismissed before trial").

Further, dismissal under § 1367(c)(3) is especially appropriate where, as in this case, these non-diverse, non-federal question parties face only state law claims. The legal malpractice claim does not give rise to a federal question, and no related state law claims were asserted here against the municipal defendants. Dismissal without prejudice under § 1367 thus serves the purpose of enabling the sole remaining parties to litigate their sole state law claims in state court.

For the reasons stated above, the Court will dismiss Plaintiffs' legal malpractice claim against the Birchmeier

Defendants without prejudice, for lack of jurisdiction, in accordance with 28 U.S.C. § 1367(c)(1). See, e.g., Rothman v. City of Northfield, 716 F. Supp. 2d 369, 375 (D.N.J. 2010); Kadetsky v. Egg Harbor Twp. Bd. of Educ., 164 F. Supp. 2d 425, 436-37 (D.N.J. 2001).

**V.   CONCLUSION**

For the foregoing reasons, the Court will grant the Sea Isle City Defendants' motion to dismiss Counts One and Two and will decline to exercise supplemental jurisdiction over the legal malpractice claim against the Birchmeier Defendants in Count Three. The Court will therefore grant the Birchmeier Defendants' motion to dismiss Count Three, and Count Three will be dismissed without prejudice for lack of jurisdiction. The accompanying Order will be entered.


**September 14, 2015**                           **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 Chief U.S. District Judge